Glinder DRAKE, Plaintiff-Respondent,†

v.

Marcia E. HUBER, Learning Enterprise of Wisconsin, Perez-Pena, Ltd., ABC Insurance Co. and DEF Insurance Co., Defendants-Appellants.

Court of Appeals

*No. 96–2964. Submitted on briefs March 4, 1998.—Decided April 21, 1998.*

(Also reported in 582 N.W.2d 74.)

†Petition to review denied.

On behalf of the defendants-appellants Marcia E. Huber and Perez-Pena, Ltd., the cause was submitted on the briefs of *Charles H. Bohl* and *M. Elizabeth O'Neill* of *Whyte, Hirschboeck, Dudek, S.C.*, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Frank R. Terschan* and *Jeffrey S. Krause* of *Terschan, Steinle & Ness*, of Milwaukee.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

CURLEY, J.   Marcia E. Huber and her employer, Perez-Pena, Ltd. (collectively, "Huber") appeal from a non-final trial court order denying Huber's motion to

dismiss the lawsuit filed against her by Glinder Drake, or alternatively, to grant summary judgment in favor of Huber. Huber claims that the trial court erred by failing to dismiss or grant summary judgment because she is immune from liability pursuant to § 48.981(4), STATS. We agree and reverse the trial court's order.

## I.   BACKGROUND.

On June 11, 1994, a six-year-old boy, Tony G., was brought to the Learning Enterprise of Wisconsin's Reception Center after a car accident incapacitated his grandfather, who had custody of Tony at the time. The Reception Center is a licensed child welfare agency under contract with the Milwaukee County Department of Human Services (MCDHS) to provide temporary protective services for children when the custodial adult is unavailable. Glinder Drake, an employee of the Reception Center, was on duty the night Tony was brought to the Reception Center and processed his intake. Tony stayed the night at the Reception Center and then was returned to his mother the next day.

On approximately July 1, 1994, Melissa Dombrowski, a student intern employed by MCDHS, visited Tony's home on an unrelated matter. During the visit, Tony and his mother told Dombrowski that Tony had been touched in his genital area by a "big girl" with short hair at the Reception Center. Tony said that he wanted his mother to cut off his long braid because people at the Reception Center thought he was a girl, and that he believed he was touched in the genitals to determine whether he was a boy or a girl. Tony's mother told Dombrowski that she believed Tony had been touched by an intake worker attempting to deter-

mine Tony's gender, and that Tony used the word "big" to describe all adults.

Dombrowski completed a risk assessment and reported the suspected child sexual abuse to MCDHS. Perez-Pena, Ltd., a licensed child welfare agency under contract with MCDHS, was then designated to perform an independent investigation pursuant to statute. Marcia Huber, an employee of Perez-Pena, Ltd., and an experienced child welfare worker, investigated the complaint.

As part of her investigation, Huber examined the Reception Center's records, and interviewed the director of the Reception Center and the shift manager on duty at the time of Tony's arrival. Huber also interviewed Drake, who denied any improper contact with Tony. Huber then assigned Dombrowski the task of conducting a follow-up interview with Tony. Dombrowski interviewed Tony again, and reported to Huber that Tony had physically demonstrated the inappropriate touch and then had become uncommunicative. Huber then submitted her report to MCDHS. Following the submission of the report, at the request of MCDHS, the Reception Center terminated Drake.

Following her termination, Drake sued Huber, Perez-Pena, Ltd., Milwaukee County, and the Reception Center. Her amended complaint alleged "outrageously negligent" and "willful and wanton" conduct on Huber's part in conducting her investigation. Huber filed a motion to dismiss, or in the alternative, a motion for summary judgment on the ground that she was immune from liability pursuant to § 48.981(4), STATS. After reviewing the parties' submissions, the trial court denied the motion, finding that an issue of material fact existed as to whether Huber conducted her investigation in good faith. Huber then filed a

motion to appeal from the non-final order, which was granted, and Huber now appeals.

## II. ANALYSIS.

Huber claims that the trial court erred by failing to grant her motion to dismiss, or, in the alternative, to grant summary judgment. Huber's motion included the presentation of matters outside of the pleadings which the trial court did not specifically exclude. Therefore, we treat the trial court's order as a denial of a motion for summary judgment. *See* RULE 802.06(2)(b), STATS.

Our review of a trial court's denial of summary judgment is *de novo. Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–16, 401 N.W.2d 816, 820 (1987). On review of a denial of summary judgment, we, like the trial court, initially examine the pleadings to determine whether the complaint states a claim. *See Grams v. Boss*, 97 Wis. 2d 332, 339, 294 N.W.2d 473, 477 (1980). Nonetheless, even if the pleadings state a claim, summary judgment must be granted if the evidentiary material demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RULE 802.08(2), STATS.

Huber argues that she is entitled to summary judgment because she is immune from liability pursuant to § 48.981(4), STATS. That statute reads, in relevant part:

> IMMUNITY FROM LIABILITY. Any person or institution participating in good faith in the making of a report, conducting an investigation, . . . under this section shall have immunity from any liability, civil or criminal, that results by reason of the action. For

676

the purpose of any proceeding, civil or criminal, the good faith of any person reporting under this section shall be presumed. . . .

Thus, unless Drake is able to overcome the presumption that Huber acted in good faith in conducting the investigation which led to her termination, Huber is entitled to immunity, and the trial court should have granted summary judgment.

Drake argues that the trial court correctly found that a question of fact exists as to whether the presumption of good faith in § 49.981(4), STATS., was overcome because Huber allegedly conducted her investigation in violation of § 48.981(3). Drake claims that Huber failed to conduct her investigation in good faith for two reasons: (1) Huber failed to personally interview Tony; and (2) Huber failed to conduct an independent investigation by allowing Dombrowski, a Milwaukee County employee, to interview Tony. Drake claims that Huber's actions violated § 48.981(3), and therefore, that Huber failed to act in good faith. We are not persuaded.

In *Phillips v. Behnke*, 192 Wis. 2d 552, 531 N.W.2d 619 (Ct. App. 1995), this court discussed the meaning of the term "good faith" as it is used in § 48.981(4), STATS. In *Phillips*, the plaintiffs alleged that the defendants had failed to report allegations of child abuse in good faith. In concluding that there was no evidence that the respondents had not acted in good faith, we noted that Black's Law Dictionary defines good faith partly as "the absence of malice." *Id.* at 564, 531 N.W.2d at 624. We then concluded that there were no facts or allegations to suggest that the respondents reported their allegations out of malice, and thus, that there was no factual dispute as to the respondent's good faith. *Id.* at 565, 531 N.W.2d at 624.

■Although we did not expressly define the term "malice" as it applies in this context, BLACK'S LAW DICTIONARY 956 (6th ed. 1990) defines malice as:

> the intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent. A condition of mind which prompts a person to do a wrongful act willfully, that is, on purpose, to the injury of another, or to do intentionally a wrongful act toward another without justification or excuse. A conscious violation of the law (or the prompting of the mind to commit it) which operates to the prejudice of another person.

Thus, to overcome the presumption of good faith, Drake must show more than a violation of § 49.981(3), STATS.; she must also demonstrate that the violation was "conscious" or "intentional." We conclude that Drake has produced no evidence of statutory violations, much less conscious or intentional statutory violations, and therefore, that summary judgment is appropriate.

Drake begins by arguing that Huber violated § 48.981(3)(c)1, STATS., by not personally interviewing Tony. Section 48.981(3)(c)1 states, in relevant part:

> Within 24 hours after receiving a report [of an abused or neglected child], the county department . . . shall . . . initiate a diligent investigation to determine if the child is in need of protection or services. The investigation shall be conducted in accordance with the standards established by the department for conducting child abuse and neglect investigations. If the investigation is of a report of abuse or neglect . . . by a caregiver . . . that does not disclose who is suspected of the abuse or neglect and

> in which the investigation does not disclose who abused or neglected the child, the investigation shall also include observation of or an interview with the child, or both, and, if possible, an interview with the child's parents, guardian or legal custodian.

Although this statute requires an observation of or an interview with the child under certain circumstances, it does not state who, in particular, is to conduct the interview, nor does it forbid delegation of the task by the person chiefly responsible to a subordinate or outside agent. In this case, although Huber did not personally conduct an interview, Perez-Pena, Ltd. arranged for Dombrowski to conduct an interview, and Dombrowski actually interviewed Tony. Although the fact that Dombrowski was a MCDHS employee might arguably implicate the "independent investigation" requirements of § 48.981(3)(d)2, as will be discussed later, Huber's conduct does not violate § 48.981(3)(c)1. Section 48.981(3)(c)1 merely requires the organization conducting the investigation, under certain circumstances, to interview the child, and in this case, Perez-Pena, Ltd., through Dombrowski, complied with the statute by conducting an interview.

Drake also argues that Huber failed to act in good faith by violating § 48.981(3)(d)2, STATS. Section 48.981(3)(d)2 states in relevant part:

> [When a] . . . child welfare agency under contract with the county department required to investigate [claims of child abuse and neglect] is the subject of a report [of child abuse or neglect,] the county department shall . . . notify the [state] department [of health and family services]. Upon receipt of the notice, the [state] department [of health and family services] or a county department or child welfare

agency designated by the [state] department [of health and family services] shall conduct an independent investigation. . . .

*See* § 48.02(4), STATS. (term "department," as used in Chapter 48, refers to the Wisconsin Department of Health and Family Services).

The terms "independent investigation" are not defined in the statute, and neither party has presented us with any cases construing the terms. According to Drake, Huber failed to conduct her investigation "independently" because she used an intern from MCDHS to conduct the interview. Drake fails to acknowledge, however, that according to the plain language of § 48.981(3)(d)2, STATS., MCDHS is one county department, among many others, which the Wisconsin Department of Health and Family Services may designate to conduct the entire "independent" investigation. *See* § 48.981(3)(d)2 ("If the department designates a county department under s. 46.215, 46.22, *46.23*, 51.42, or 51.437, that county department shall conduct the independent investigation.") (emphasis added); *and see* § 46.23, STATS. (authorizing the creation of county departments of human services). Other county departments which are authorized to conduct independent investigations under § 48.981(3)(d)2 include: (1) the county department of social services, *see* §§ 46.215 and 46.22, STATS.; (2) the county department of community programs, *see* § 51.42, STATS.; and (3) the county department of developmental disabilities, *see* § 51.437, STATS. Thus, MCDHS and a number of other county organizations are explicitly authorized by § 48.981(3)(d)2 to conduct independent investigations without the assistance of any non-county employees. We fail to see how the participation of a single MCDHS employee in an investigation conducted by a private,

non-county agency could suddenly fail to be "independent" when MCDHS could have lawfully conducted the entire independent investigation.

Finally, as Huber argues, even if her conduct in failing to personally interview Tony and in delegating that task to a county intern did amount to a violation of either § 48.981(3)(c)1 or (d)2, STATS., Drake has failed to present any credible evidence that Huber acted maliciously. Although Drake claims that Huber "knowingly and intentionally violated" the applicable statutes, neither statutory provision clearly prohibits Huber's conduct, and there is no evidence to show that Huber thought she was violating the law by acting as she did. As we stated in *Phillips*, "[n]egligence does not rise to the level of bad faith." *Phillips*, 192 Wis. 2d at 565, 531 N.W.2d at 624. Therefore, even if we were to find that Huber violated § 48.981(3)(c)1 or (d)2, there is no evidence that Huber did so with an absence of good faith.[1]

Because Drake has failed to overcome the presumption of good faith in § 48.981(4), STATS., Huber is immune from liability and the trial court erred by denying Huber's motion for summary judgment. Therefore, we reverse the trial court's order.

---

[1] We note that Drake also argues that, by failing to personally interview Tony, and by delegating that task to Dombrowski, Huber violated ministerial, as opposed to discretionary, duties and therefore, should not be immune from liability pursuant to § 48.981(4), STATS. Like Drake's other arguments, this one is not persuasive. Even if § 48.981(3)(c)1 and (d)2 create ministerial duties to conduct an interview with the child under certain circumstances, and to conduct an "independent" investigation, Huber complied with those duties by directing Dombrowski to personally interview Tony. Thus, summary judgment was appropriate.

*By the Court.*—Order reversed.