D.B., a minor by his guardian, Trista Lee Recore, Plaintiff-Respondent,

v.

COUNTY OF GREEN LAKE, County of Green Lake Social Services and Wisconsin County Mutual Insurance Company, Defendants-Co-Appellants,

CITY OF BERLIN and City of Berlin Police Department, Defendants-Appellants.

Court of Appeals

*No. 2015AP1301. Submitted on briefs January 21, 2016.—Decided March 2, 2016.*

2016 WI App 33

(Also reported in 879 N.W.2d 131.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Michael J. Cieslewicz* and *Casey M. Kaiser* of *Kasdorf, Lewis & Swietlik, S.C.*, Milwaukee.

On behalf of the defendants-co-appellants, the cause was submitted on the briefs of *Martin J. De Vries* of *Sager & Colwin Law Offices, S.C.*, Fond du Lac.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Michael Lim* and *Emily Z. Dunham* of *Reff, Baivier, Bermingham & Lim, S.C.,* Oshkosh.

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

¶ 1. REILLY, P.J. This case addresses governmental immunity. The County of Green Lake, the County of Green Lake Social Services, and Wisconsin County Mutual Insurance Company (collectively, the County), along with the City of Berlin and the City of Berlin Police Department (collectively, the Police Department) appeal the trial court's denial of their motions for summary judgment, which sought immunity for any negligence on their part.[1] D.B., by his mother, brought suit against the County and the Police Department alleging that they were both negligent in their investigation of sexual assault allegations in 2011, which resulted in the continued sexual assault of D.B. D.B.'s mother claims that her half brother was a danger to D.B. and asserts that the County and the Police Department should have known he was a danger based on the allegations D.B. made, although D.B.'s mother admits that no one actually knew in 2011 that her half brother was a danger.

¶ 2. The trial court determined that the "known danger" exception precluded granting immunity to the County and the Police Department. We disagree for two reasons: (1) the scope and breadth of an investigation into allegations of child abuse is a discretionary

---

[1] This court granted leave to appeal the order. *See* WIS. STAT. RULE 809.50(3) (2013–14). All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise stated.

287

act rather than a ministerial act and (2) D.B. admits that no one actually knew D.B.'s uncle was dangerous in 2011 and therefore no "known danger" was present as an exception to immunity. We reverse and remand for a grant of judgment to the defendants on all of plaintiff's claims.

## BACKGROUND

¶ 3. On February 24, 2011, the principal of D.B.'s elementary school in Berlin notified Police School Liaison Officer Doug Christensen that first-grader D.B. had attempted to kiss and "dry hump" one of his fellow classmates. The principal further relayed that, when asked, D.B. told him that his Uncle Rob, had "told him about humping" and had showed him pictures of naked people on his cell phone.

¶ 4. Christensen referred the allegations to the County's social services department, which "screened" the allegations per their department rules. Department standards require a screening to be completed within twenty-four hours of a report of child abuse being made. *See also* Wis. Stat. § 48.981(3)(c)1.a. The department screened the report the same day it was received. The screening investigation revealed that the uncle not only showed D.B. "pictures of adults humping" but also allegedly "touched [D.B.'s] privates while at Grandma or Aunt C[.]'s home." The department concluded that the uncle was not a "caregiver" as defined in § 48.981(1)(am) and referred the abuse allegations (per §§ 48.02(1)(b)-(f) and 48.981(3)(a)3.) to law enforcement for investigation. The department followed its standards by making the screening decision within twenty-four hours of receipt of the report of child abuse.

¶ 5. Christensen thereafter interviewed D.B. who said that his Uncle Rob showed him "pictures of people having sex" on his cell phone and that on various occasions his uncle "punched" D.B.'s genitals over his clothing when he was mad. D.B. did not disclose any other inappropriate touching. Christensen then spoke to D.B.'s mother, who told Christensen that Uncle Rob, her half brother, had babysat D.B. in the past, but she was unaware that he had shown D.B. any inappropriate pictures.

¶ 6. Christensen interviewed Uncle Rob after reading him his *Miranda*[2] rights. The uncle denied all allegations, saying that he did not own a cell phone during the time D.B. said the pictures were shown and that he never inappropriately touched D.B. The uncle also suggested that D.B. learned about humping from his parents, as the uncle had observed D.B.'s parents dry hump each other in the kitchen while D.B. was present.

¶ 7. Christensen called D.B.'s mother a second time to follow up on what the uncle had said. D.B.'s mother said she was not sure if Uncle Rob had a cell phone during the time in question and said that she never saw her half brother have any inappropriate contact with D.B. She also stated that she and her husband never displayed any sexual behavior in front of D.B. Christensen told D.B.'s mother that, based on his investigation, he would not be referring the case for criminal charges, but that he would forward the information to the district attorney. He also asked D.B.'s mother to contact him with any additional information. Christensen then submitted his findings, his

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

report, and a written statement from Uncle Rob to the district attorney, who decided not to issue charges against the uncle.

¶ 8. Two years later, D.B. began to exhibit additional behavioral problems and an investigation revealed that Uncle Rob had been sexually abusing D.B. for a number of years. Uncle Rob ultimately pled no contest to first-degree sexual assault of a child.

¶ 9. D.B., by his mother, sued the County and the Police Department, alleging that their negligent investigation in 2011 resulted in the uncle's further sexual assaults of D.B. The County and the Police Department responded with motions seeking dismissal on grounds of immunity. The trial court denied defendants' motions on the ground that the "known danger" exception to government immunity under WIS. STAT. § 893.80(4) applied. We granted leave to appeal.

## DISCUSSION

¶ 10. This case requires us to decide whether the County and/or the Police Department have immunity under the facts presented by Plaintiff. "The immunity defense assumes negligence, focusing instead on whether the [government] action (or inaction) upon which liability is premised is entitled to immunity under the statute, and if so, whether one of the judicially-created exceptions to immunity applies." *Lodl v. Progressive N. Ins. Co.*, 2002 WI 71, ¶ 17, 253 Wis. 2d 323, 646 N.W.2d 314. The issue of governmental immunity involves applying legal standards to a set of facts, which is a question of law. *Id.* We review these issues of immunity de novo. *Heuser v. Community Ins. Corp.*, 2009 WI App 151, ¶ 21, 321 Wis. 2d 729, 774 N.W.2d 653.

¶ 11. We begin by focusing on the government action or inaction upon which liability is premised. D.B. argues that Uncle Rob is a "caregiver" as that term is used in WIS. STAT. § 48.981(1)(am). Since the County defined Uncle Rob as not being a "primary" caregiver, D.B. contends the County violated a ministerial duty and is not entitled to immunity. As we will explain below, the County conducted a screening based on D.B.'s allegations and concluded that it did not need to intervene in D.B.'s family structure as Uncle Rob did not live within D.B.'s home nor was he a "primary" caregiver. The County referred the matter to the police for further criminal investigation (i.e. the mirandized statement of Uncle Rob). The scope and breadth of the County's screening/investigation as well as their conclusions as to whether Uncle Rob was a "caregiver" were clearly discretionary acts entitled to immunity.

¶ 12. D.B. also claims that the "known danger" exception to immunity applies as Uncle Rob was a dangerous person and the police should have discovered that fact in 2011. As we set forth below, the scope and breadth of the investigation by the Police Department clearly falls within a discretionary analysis and as such the police are entitled to immunity. The "known danger" exception does not apply as no one actually knew that Uncle Rob was dangerous in 2011.

## Immunity: The Police Department

¶ 13. WISCONSIN STAT. § 893.80(4) provides immunity for the government and its employees for discretionary acts:

> No suit may be brought against any volunteer fire company organized under [WIS. STAT.] ch. 213, political corporation, governmental subdivision or any agency

thereof for the intentional torts of its officers, officials, agents or employees nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

Sec. 893.80(4). *See also Hoskins v. Dodge Cty.*, 2002 WI App 40, ¶ 14, 251 Wis. 2d 276, 642 N.W.2d 213 ("acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions," have been interpreted to encompass "discretionary" acts).

¶ 14. There are several exceptions to governmental immunity. Two are at issue in this case: the ministerial duty exception and the "known danger" exception. Under the ministerial duty exception, public officers or employees are denied immunity when a government response "is absolute, certain and imperative, involving merely the performance of a specific task." *Lodl*, 253 Wis. 2d 323, ¶ 25 (citation omitted). A duty must be "positively imposed by law, and its performance required at a time and in a manner, or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion." *Id.*, ¶ 26 (citation omitted).

¶ 15. The second exception, the "known danger" exception, is a subset of the ministerial duty exception. It precludes immunity where a known and compelling danger creates a ministerial duty to act on the part of public officers or employees. *Id.*, ¶ 24. No immunity exists when there is "a known present danger of such force that the time, mode and occasion for performance

is evident with such certainty that nothing remains for the exercise of judgment and discretion." *Id.*, ¶ 38 (citation omitted). For this exception to apply, the danger must be so compelling as to require "self-evident" and "particularized" action. *Id.*, ¶ 40.

¶ 16. D.B. argues that the Police Department had a duty to warn D.B.'s parents that Uncle Rob might pose a danger to D.B. under the "known danger" exception. According to D.B., his behavior—acting out sexually and reporting that he had been shown inappropriate pictures—evidenced a compelling, dangerous condition. D.B. contends that Christensen should have known that Uncle Rob was sexually abusing D.B., and, therefore, had a duty to warn D.B.'s parents of the danger Uncle Rob posed.

¶ 17. We are not persuaded by D.B.'s argument. The Police Department performed their ministerial duty by promptly acting in response to the report from the school principal and performing a criminal investigation. D.B.'s objection is to the scope of the investigation, inferring that the police should have somehow deduced or learned through additional investigation that Uncle Rob was in fact assaulting D.B. The "how" and "scope" of the investigation performed by the Police Department is a discretionary act rather than a ministerial duty.

¶ 18. The "known danger" exception does not apply considering all the facts presented. Given the full scope of the police investigation, including the information provided by D.B., his mother, and the mirandized statement of Uncle Rob, there are no facts demonstrating that a "compelling danger" existed requiring immediate "self-evident" or "particularized" action on the part of the police. D.B.'s mother admits

that no one actually knew in 2011 that her half brother was in fact abusing D.B. Christensen exercised discretion regarding the manner of investigation into the abuse: he contacted the County's social services department, he interviewed D.B., he interviewed and questioned D.B.'s mother, he took a mirandized statement from Uncle Rob, discussed the matter with D.B.'s mother a second time to address Uncle Rob's responses, and he passed along his reports to the district attorney for ultimate review of criminal charges. While D.B.'s mother posits that Uncle Rob was dangerous and that Christensen should have known as much, she herself agrees that the record simply does not establish that anyone actually *knew* Uncle Rob was a danger in 2011.

¶ 19. D.B. also argues that the trial court was correct to deny summary judgment because an issue of material fact remains: whether the Police Department should have known in 2011 that Uncle Rob was dangerous. We disagree. Whether immunity or an exception applies is a threshold issue and we accept that Uncle Rob was dangerous in 2011. But we must also accept that no one *knew* that Uncle Rob was dangerous in 2011. We accept D.B.'s premise that the Police Department acted negligently for the purposes of an immunity defense, but the key facts are that the scope and breadth of the police investigation was clearly a discretionary act entitled to immunity and the police had no actual knowledge that the uncle was abusing D.B.

### Immunity: The County

¶ 20. We note at the outset that the County claims immunity under both Wis. Stat. §§ 893.80(4) and 48.981(4). While § 893.80(4) addresses general

governmental immunity, § 48.981(4) applies specifically to immunity from liability resulting from reports or investigation of suspected child abuse or neglect. Since we conclude that the County may claim immunity under either statute, we will discuss D.B.'s claims under both §§ 893.80(4) and 48.981(4).

■

¶ 21. The crux of D.B.'s claim against the County is that immunity under Wis. Stat. § 893.80(4) does not apply because the County had a ministerial duty to investigate D.B.'s allegations. According to D.B., the County improperly applied Wis. Stat. § 48.981(1)(am) and designated Uncle Rob as a noncaregiver, which ended the County's further investigation. D.B. argues that Uncle Rob actually *was* a "caregiver" under the law, and therefore the County had a statutory duty to investigate. D.B. claims that the County's duty to properly apply the statute was ministerial in nature, and the ministerial duty exception to immunity should apply. We disagree.

¶ 22. The parameters of the ministerial duty exception are set forth in paragraph 14, and we disagree under the facts put forth by D.B. that the County had a ministerial duty to perform a more thorough investigation than the one they did. Wisconsin Stat. § 48.981 provides the procedure for making reports and investigating claims of suspected child abuse or neglect. Section 48.981(2) creates a ministerial duty on certain individuals to report suspected child abuse when there is "reasonable cause to suspect that a child seen by the person in the course of professional duties has been abused or neglected." Sec. 48.981(2)(a). Both the principal of D.B.'s elementary school and Christensen had a duty to report given D.B.'s statements to

the school principal and they did so.[3] The scope and breadth of the County's investigation of the reported abuse falls within their discretion rather than being a ministerial act. The scope of the investigation by the County, including whether Uncle Rob was a "caregiver," is a determination that is not "absolute, certain and imperative, involving merely the performance of a specific task." *Lodl*, 253 Wis. 2d 323, ¶ 25.

¶ 23. The County's aim is the immediate safety of the child. The County investigated whether D.B. was in need of protective services and concluded that removal of D.B. from his home would be unnecessary because Uncle Rob was not a "primary" caregiver and referred the investigation to the Police Department.

The County's investigation followed the requirements of WIS. STAT. § 48.981(3)(a)3. by referring the matter to the police for investigation within twelve hours of receiving the report. Assuming for the purposes of immunity review that the County should have concluded that Uncle Rob was a "caregiver" would not change the fact that such a determination is a discretionary act. We, therefore, conclude that immunity under WIS. STAT. § 893.80(4) applies to the County.

■

¶ 24. D.B. next argues that immunity under WIS. STAT. § 48.981(4) does not apply because the County failed to properly apply the statute and failed to

---

[3] Under WIS. STAT. § 48.981(3)(a)1., once a school administrator or law enforcement officer is aware of abuse, all discretion is stripped away: "A person required to report under sub. (2) *shall* immediately inform, by telephone or personally, the county department . . . of the facts and circumstances contributing to a suspicion of child abuse or neglect or of unborn child abuse or to a belief that abuse or neglect will occur." (Emphasis added.)

conduct an investigation. The error in D.B.'s premise is that the County did conduct an investigation into whether D.B. was in need of protection or services. The County's investigation concluded that Uncle Rob was not a "primary" caregiver and, therefore, additional investigation into whether it was necessary to, for example, remove D.B. from his parent's home was unnecessary. *See* § 48.981(3)(c)2.a. Instead, the County referred the investigation to its fellow governmental unit—the Police Department, in accord with its duties under § 48.981(3)(a)3.

¶ 25. Under Wis. Stat. § 48.981(4), institutions are immune from liability arising from actions resulting from making a report or conducting an investigation into suspected child abuse or neglect:

> Immunity from liability. *Any person or institution participating in good faith in the making of a report, conducting an investigation,* ordering or taking of photographs or ordering or performing medical examinations of a child or of an expectant mother *under this section shall have immunity from any liability, civil or criminal, that results by reason of the action.* For the purpose of any proceeding, civil or criminal, *the good faith of any person reporting under this section shall be presumed.* The immunity provided under this subsection does not apply to liability for abusing or neglecting a child or for abusing an unborn child.

*Id.* (emphasis added). To rebut the presumption of good faith, a plaintiff must demonstrate a violation that is "conscious" or "intentional." *Drake v. Huber*, 218 Wis. 2d 672, 678, 582 N.W.2d 74 (Ct. App. 1998). Proof of negligence alone is insufficient to rebut the presumption of good faith. *Phillips v. Behnke*, 192 Wis. 2d 552, 565, 531 N.W.2d 619 (Ct. App. 1995).

¶ 26. D.B. makes no argument nor offers any facts that the County was not "participating in good faith" in conducting its investigation nor that the County's negligent application of the statute was either conscious or intentional. While D.B. makes an argument that Uncle Rob was a "caregiver" under the statutory definition,[4] as Uncle Rob was a "relative," *see* WIS. STAT. § 48.981(1)(am)8., and he occasionally babysat D.B, *see* § 48.981(1)(am)6.-7., the fact of whether Uncle Rob was or was not a "caregiver" is not determinative of the question of whether immunity applies. The County's determination of "caregiver" status goes to the question of negligence, not immunity, and does not change our analysis. The County utilized its discretion in concluding its investigation into the alleged abuse and referred the allegations back to the Police Department to investigate per § 48.981(3)(a)3.[5]

---

[4] Under WIS. STAT. § 48.981(1)(am), a "caregiver" includes:

6. A person who provides or has provided care for the child in or outside of the child's home. 7. Any other person who exercises or has exercised temporary or permanent control over the child or who temporarily or permanently supervises or has supervised the child. 8. Any relative of the child other than a relative specified in subd. 1.

[5] *See* WIS. STAT. § 48.981(3)(a)3., (b) (describing procedure for referral of report to sheriff or police department). Section 48.981(3)(c) also provides:

*Duties of county departments.* 1. a. Immediately after receiving a report under par. (a), the agency shall evaluate the report to determine whether there is reason to suspect that a caregiver has abused or neglected the child, has threatened the child with abuse or neglect, or has facilitated or failed to take action to prevent the suspected or threatened abuse or neglect of the child. *Except as provided in sub. (3m), if the agency determines that a caregiver is suspected of abuse* or neglect or of threatened abuse or neglect of the child, determines that a caregiver is suspected of

¶ 27. D.B. also argues that WIS. STAT. § 48.981(4) "does not provide immunity for screening out reports." This argument is without merit. The statute clearly contemplates a screening process to determine what procedures the agency must follow. *See* § 48.981(3)(c). The decision to screen out D.B.'s allegations derived directly from a report provided by Christensen as did the decision to refer the matter for law enforcement action per § 48.981(3)(a)3. This is exactly the procedure contemplated by the statute and is precisely the kind of action for which the statute provides immunity. To construe it otherwise "would eviscerate the protections of the statute and lead to absurd results." *Cf. Phillips*, 192 Wis. 2d at 561. We conclude that immunity under § 48.981(4) applies to D.B.'s claims against the County.

¶ 28. Therefore, for all the foregoing reasons, we reverse the trial court's order denying summary judgment and grant defendants' motions for summary judgment. We remand this cause and direct the trial court to dismiss all claims against the defendants.

*By the Court.*—Order reversed and cause remanded with directions.

---

facilitating or failing to take action to prevent the suspected or threatened abuse or neglect of the child, or cannot identify an individual who is suspected of abuse or neglect or threatened abuse or neglect of the child, within 24 hours after receiving the report *the agency shall*, in accordance with the authority granted to the department under s. 48.48 (17) (a) 1. or the county department under s. 48.57 (1) (a), *initiate a diligent investigation to determine if the child is in need of protection or services. If the agency determines that a person who is not a caregiver is suspected of abuse or of threatened abuse, the agency may, in accordance with that authority, initiate a diligent investigation to determine if the child is in need or protection or services.* (first emphasis in original, remaining emphasis added.)