**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**June 22, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.  2020AP1904**

**STATE OF WISCONSIN**

Cir. Ct. No.  2016FA223

**IN COURT OF APPEALS**
**DISTRICT III**

IN RE THE PATERNITY OF G. L. G.:

BRIAN JAMES GEIGLE,

    PETITIONER-RESPONDENT,

 V.

JAIME ASHLEY BENNER,

    RESPONDENT-APPELLANT.

        APPEAL from an order of the circuit court for St. Croix County: R. MICHAEL WATERMAN, Judge. *Affirmed.*

        Before Stark, P.J., Hruz and Gill, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jaime Benner appeals an order granting sole legal custody and primary physical placement of her son, Gabe,[1] to Gabe's father, Brian Geigle.[2] Benner argues that the circuit court erroneously exercised its discretion by awarding Geigle legal custody because the court failed to recognize that she made better decisions than Geigle regarding Gabe's care. She also contends that the court erroneously exercised its discretion by awarding Geigle primary physical placement because the court failed to apply the presumption that continuing Gabe's primary physical placement with Benner was in Gabe's best interest and because there was no evidence to rebut that presumption. In addition, Benner argues that the court "improperly elevated the increased conflict between the parents over [Gabe's] daily needs …." Finally, Benner asserts that the court improperly admitted evidence of her multiple reports of child abuse by Geigle and that the court failed to apply a presumption of good faith to her reports. We reject Benner's arguments and affirm.

## BACKGROUND

¶2 Benner gave birth to Gabe in 2013. Having never been married to Benner, Geigle filed a petition in 2016 seeking to be adjudicated as Gabe's father and awarded legal custody and physical placement. Geigle was subsequently

---

[1] For ease of reading, we refer to the child in these proceedings by a pseudonym, rather than his initials. *See* WIS. STAT. RULE 809.19(1)(g) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] Gabe's guardian ad litem (GAL) filed a statement on June 17, 2021, advising that she would not be participating in this appeal but that she "joins in the position of [Geigle]." Benner's counsel later sought clarification from this court regarding whether the GAL's statement required a reply. Ultimately, the GAL's statement did not require a reply because Benner's reply brief responded to the issues raised in Geigle's response brief and, thus, adequately responded to the GAL's suggestion that we accept Geigle's arguments. To the extent the GAL's statement advances any new argument not raised in Geigle's brief, we do not consider that argument.

adjudicated Gabe's father in July 2016. After a contested trial, the circuit court issued an order in June 2017, awarding the parties joint legal custody and shared placement of Gabe ("the 2017 order"). Benner was assigned placement on weekdays during the school year and weekends during the summer, and Geigle was assigned the opposite schedule.

¶3      In December 2018, Geigle filed a motion seeking to modify the 2017 order to give him sole legal custody and primary physical placement of Gabe. In support of his motion, Geigle filed an affidavit asserting, among other things, that Benner had not supported his relationship with Gabe, that Benner had unreasonably restricted Gabe's placement with Geigle, and that Benner had made "repeated false allegations" to social services and law enforcement regarding his having sexually and physically abused Gabe. Benner later filed her own affidavit, in which she acknowledged, among other things, that she had made reports regarding concerns that Geigle was sexually and physically abusing Gabe. Benner asserted that those reports were still under investigation. Benner later filed her own motion requesting sole legal custody and primary physical placement.

¶4      The circuit court received evidence on the two motions over the course of several hearings in 2020. The court heard testimony from many witnesses, including Benner, Geigle, investigators from law enforcement and child protective services, teachers from Gabe's school, Beverly Green (a psychotherapist who began working with Gabe in 2019), Dr. Christopher Babbitt (a clinical psychologist who evaluated the parties and completed a custody study at the request of Gabe's GAL), and Dr. Kelly Champion (a clinical and forensic psychologist retained by Benner to review and analyze Babbitt's report). Following the hearings, the court issued a detailed written decision with numerous

3

findings of fact. The court also considered each of the factors set forth in WIS. STAT. § 767.41(5)(am) bearing on Gabe's best interest.

¶5 As relevant to this appeal, the circuit court found that from a young age, Gabe had exhibited concerning behavior, which was, at times, aggressive or sexual in nature. The court acknowledged that Gabe struggles academically and that his school had developed an individualized education plan to address his special needs. The court recognized that both parties spend quality time with Gabe and support his educational and recreational needs. It also noted, however, that Benner has more insight into Gabe's educational needs and that her involvement in Gabe's education has been more consistent and robust than Geigle's involvement. The court found that Gabe loves both of his parents and wants to spend quality time with each of them.

¶6 The circuit court also discussed conflicts between the parties. The court recognized that communication between the parties had grown worse over the years and that both parties were responsible for the breakdown in communication. The court found that Benner had not supported Gabe's relationship with Geigle and that she had interfered with "Geigle's placement, communication, and relationship with [Gabe]." In particular, the court found that Benner had excluded Geigle from decisions regarding Gabe's medical and dental care, had made derogatory comments about Geigle in Gabe's presence, had misrepresented to others that she had an order for protection against Geigle while "with[holding Gabe] from Mr. Geigle for six weeks," and had refused to provide Geigle with four days of court-ordered "make-up time." In addition, the court noted that Benner engaged in domestic abuse in front of Gabe in February 2020 when she struck Geigle six to eight times and broke his phone and television. The court found that Gabe stood between his parents during the incident and "was

4

traumatized." Despite the parties' issues, the court recognized that Geigle continues to show a willingness to support Gabe's relationship with Benner.

¶7 The circuit court also considered allegations of sexual and physical abuse. It found that "Benner has committed herself to prove that Mr. Geigle is physically and sexually abusing [Gabe]" but that "[h]er allegations are unproved." The court further noted that "[c]redible evidence suggests that either Ms. Benner has jumped to conclusions from misinterpreted facts or that she has outright misrepresented facts to concoct a false narrative about Mr. Geigle. In either case, the parties cannot co-parent under the persistent cloud of unfounded allegations of child abuse."

¶8 Although the circuit court acknowledged that Gabe "has said things that are cause for concern," the court further recognized that Gabe later recanted some of his earlier statements and told his therapist that Benner "just makes stuff up about his father." The court found that law enforcement had investigated Benner's claims of abuse and that Gabe has been interviewed numerous times. The court also noted that none of the investigations or interviews "produced evidence sufficient to substantiate the allegations of abuse or commence child protection proceedings." In addition, the court concluded that Benner failed to establish that any of Gabe's scratches, marks, bruising, or injuries in the past were the result of abuse, recognizing that Gabe gave conflicting accounts about how the injuries occurred.

¶9 Ultimately, the circuit court awarded Geigle sole legal custody and primary physical placement of Gabe. The court found that Benner had unreasonably refused to cooperate with Geigle and that Geigle had rebutted the presumption of joint legal custody and had shown that a change of legal custody

was in Gabe's best interest. The court also found that a change of physical placement was in Gabe's best interest, noting that Benner had engaged in repeated acts that have harmed Gabe and that Benner's placement needed to be limited to protect Gabe. The court acknowledged that Geigle had "his own shortcomings as a parent, but none of them remotely approach Ms. Benner's behavior and none of them have caused [Gabe] harm."

¶10 Benner now appeals. Additional facts will be noted as necessary below.

## DISCUSSION

¶11 We review a circuit court's decision to modify a custody or placement order, including the court's determination of the child's best interest, for an erroneous exercise of discretion, giving deference to the court's decision and affirming the decision if the court applied the correct legal standard and reached a reasonable result. *Hughes v. Hughes*, 223 Wis. 2d 111, 120, 588 N.W.2d 346 (Ct. App. 1998); *see also* *Landwehr v. Landwehr*, 2006 WI 64, ¶7, 291 Wis. 2d 49, 715 N.W.2d 180; *State v. Lucas*, 2006 WI App 112, ¶23, 293 Wis. 2d 781, 718 N.W.2d 184. Whether the circuit court has applied the correct legal standard is a question of law that we review de novo. *Landwehr*, 291 Wis. 2d 49, ¶8. In addition, a court's findings of fact will not be set aside unless they are clearly erroneous, and we give due regard to the court's opportunity to judge the witnesses' credibility. WIS. STAT. § 805.17(2). If a court does not fully explain its reasoning, we may nevertheless "examine the record to determine whether the facts support the trial court's decision." *Earl v. Gulf & W. Mfg. Co.*, 123 Wis. 2d 200, 205, 366 N.W.2d 160 (Ct. App. 1985).

**I. The circuit court's modification of legal custody and physical placement**

¶12    Benner argues that the circuit court improperly modified the 2017 order under the standards set forth in WIS. STAT. § 767.451(1)(b).  She contends that the court erred in awarding Geigle sole legal custody because the court placed too much weight on her reports of abuse and her lack of cooperation with Geigle without: (1) crediting her beneficial impact on Gabe's education and development; and (2) considering Geigle's lack of cooperation with her.  Benner also contends that the court failed to apply the rebuttable presumption under § 767.451(1)(b)2.b. that physical placement with her was in Gabe's best interest.[3]

*A. Modification of legal custody*

¶13    A court may modify a legal custody order after two years if:  (1) there has been a substantial change of circumstances since the entry of the last order affecting legal custody; and (2) the modification is in the best interest of the child.  WIS. STAT. § 767.451(1)(b)1.  In determining whether modification is in the best interest of the child, the court must consider the factors set forth in WIS. STAT. § 767.41(5)(am).  ***Sikraji v. Sikraji***, 2014 WI App 113, ¶24, 358 Wis. 2d 639, 856 N.W.2d 617.  There is a rebuttable presumption that continuing the

---

[3] Benner argues for the first time in her reply brief that the circuit court's decision to change primary placement and legal custody was "contrary to the great weight of the evidence and the child's best interests."  Specifically, she contends that "the court's findings regarding [Benner's] alleged harm to [Gabe] were against the great weight of the evidence[] and … were insufficient to support the court's determination that changing primary placement and joint legal custody was in [Gabe's] best interest …."  We refuse to consider these arguments because a party cannot raise an issue for the first time in a reply brief.  *See **A.O. Smith Corp. v. Allstate Ins. Cos.**,* 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998).  Benner did not challenge the sufficiency of the evidence supporting the court's factual findings in her brief-in-chief; therefore, we limit our discussion to those arguments advanced in Benner's brief-in-chief.

current allocation of decision making under a legal custody order is in the best interest of the child. Sec. 767.451(1)(b)2.a.

¶14    The circuit court found that both parties stipulated to there being a "material change in circumstances … since the 2017 order." The court also found that there was "a factual basis for the stipulation considering the deterioration of communication between the parents, the worsening conflict, and the frequent involvement of child protective services." Benner does not dispute these findings on appeal, and we therefore do not address them further.

¶15    Benner does argue, however, that the circuit court erred by awarding Geigle sole legal custody because Benner "was found to make better decisions for their child with special needs." She also contends that the court failed to consider whether Geigle's actions were unreasonable. She asserts that the court should have given more consideration to each party's ability to make decisions for Gabe than the parties' unreasonable lack of cooperation. Benner argues that the court committed reversible error by failing to consider Geigle's unreasonable lack of cooperation and by failing to consider her superior capacity to understand Gabe's needs and to make decisions on Gabe's behalf.

¶16    Contrary to Benner's arguments, the circuit court did not find that she had a superior capacity to understand Gabe's needs and that she made "better" decisions than Geigle regarding Gabe's education and health care. The court did find that "Benner's educational interactions have been more consistent and robust than Mr. Geigle's [involvement]" and that "Benner has more insight into [Gabe's] educational needs than Mr. Geigle." The court also found, however, that both parents have admirable qualities as parents and both spend quality time with Gabe. The court further found that "[b]oth parents support [Gabe's] educational needs,

and they spend quality time reading and working on his school assignments." In short, while the court was complimentary to Benner's parenting, it did not find that Benner had "superior decision-making" abilities, that she had a better understanding of Gabe's needs, or that she was more capable of following through with parental responsibilities. That may be Benner's view of the evidence, but the court did not make those findings.[4]

¶17      In addition, although Benner criticizes the circuit court for not considering Geigle's lack of cooperation with her, the court's decision shows that it properly considered both parties' levels of cooperation. In fact, the court expressly considered the "[c]ooperation and communication between the parties and whether either party unreasonably refuse[d] to cooperate or communicate with the other party." *See* WIS. STAT. § 767.41(5)(am)10. The court recognized that both parties share in the blame for their breakdown in communication, but the court noted that "[f]ar and above the[ir] petty squabbles are the allegations of abuse." The court found that Benner "remains fixated on proving Mr. Geigle is an abuser" even though all of her allegations were unsubstantiated. The court believed that Benner's allegations had tainted nearly every interaction between the parties.

¶18      Despite explicitly considering Geigle's cooperation with Benner and whether the parties unreasonably refused to cooperate with each other, the circuit

---

[4] To the extent Benner argues that the circuit court was required to determine exactly which parent made "better" decisions, we disagree. A court's best-interest analysis is guided by WIS. STAT. § 767.41(5)(am), which does not require a specific determination of who makes "better" decisions. Although a court could certainly consider that assessment in its analysis, § 767.41(5)(am) does not require it to do so. Again, the court in this case discussed all of the factors under § 767.41(5)(am), and its findings support a conclusion that Geigle is a capable parent.

court did not find that Geigle unreasonably refused to cooperate with Benner. That determination is supported by the record. Geigle testified that he communicates with Benner when Gabe is injured, that he supports Gabe's relationship with Benner, that he always prepares Gabe to go with Benner at the end of Geigle's placement, that he tried to communicate with Benner using the Our Family Wizard application despite her refusal to do the same, and that he cooperated with law enforcement and social services investigations. As Geigle correctly observes, appellate courts review findings of fact by searching the record for evidence to support the circuit court's findings, not for evidence to support findings the court could have made but did not. *See Noble v. Noble*, 2005 WI App 227, ¶15, 287 Wis. 2d 699, 706 N.W.2d 166. Accordingly, we need not consider whether there was evidence that would have permitted the court to find that Geigle unreasonably refused to cooperate.

¶19    Furthermore, the circuit court reached a reasonable conclusion when it found that a change of legal custody was in Gabe's best interest and that Geigle had rebutted the presumption of continued joint legal custody. As mentioned earlier, the court found that Benner unreasonably refused to cooperate with Geigle. In particular, the court found that Benner refused to communicate using the Our Family Wizard application; that she excluded Geigle from decisions regarding Gabe's education, medical care, and dental care; and that she had committed herself to proving that Geigle had physically and sexually abused Gabe.

¶20    All of these findings are supported by the record. Benner admitted that she refused to communicate with Geigle through the Our Family Wizard application, despite a court order directing her to do so. In addition, Geigle testified that Benner removed Gabe from school, without Geigle's permission or knowledge, to take Gabe on out-of-state vacations to Washington, D.C., and

Idaho. Geigle also testified that Benner did not inform him or obtain his consent before taking Gabe to see a new therapist at the University of Minnesota or before taking Gabe to a new dentist. Moreover, Dr. Babbitt testified that he believed Benner "would continue to try to find a way to find [Geigle] somehow to be an abusive parent."

¶21 Based on all of these facts, the circuit court could rationally find that Benner unreasonably refused to cooperate with Geigle to parent Gabe. Under WIS. STAT. § 767.41(2)(c), a court cannot award sole legal custody "to a parent who refuses to cooperate with the other parent if the court finds that the refusal to cooperate is unreasonable." Thus, the court could not grant Benner's request for sole legal custody. The court could also reasonably conclude that Benner's repeated refusal to cooperate with Geigle was contrary to Gabe's best interest under § 767.41(5)(am)10. and that Geigle rebutted the presumption under WIS. STAT. § 767.451(1)(b)2.a.

¶22 Finally, Benner argues that WIS. STAT. § 767.41(6)(b) supports the proposition that a circuit court can award joint legal custody where parental conflict can be addressed by granting one parent sole authority to make specified decisions, such as education and health care decisions. She appears to contend that the court should have awarded her sole power to make education and health care decisions for Gabe instead of awarding Geigle sole legal custody.

¶23 Benner's arguments are unpersuasive. WISCONSIN STAT. § 767.41(6)(b) provides that "in making an order of joint legal custody, the court may give one party sole power to make specified decisions, while both parties retain equal rights and responsibilities for other decisions." Although a court could find that giving sole power to make specified decisions to one parent might

11

be in the best interest of the child, Benner has not identified any legal authority that requires a court to consider such an option before awarding sole legal custody to a parent. Moreover, the word "may" in § 767.41(6)(b) plainly communicates that a court has discretion in awarding sole power to make specified decisions.

¶24 In sum, the circuit court did not erroneously exercise its discretion by modifying the 2017 order to award Geigle sole legal custody.

*B. Modification of physical placement*

¶25 Benner next argues that the circuit court failed to apply the rebuttable presumption that maintaining Gabe's primary physical placement with her was in Gabe's best interest, pursuant to WIS. STAT. § 767.451(1)(b)2.b. She contends that the presumption requires that Gabe continue to reside primarily with her because under the 2017 order, Gabe resided with her for more time than Geigle, which she calculates to have been roughly 61.5% of each year. Benner asserts that the court's failure to apply the presumption is reversible error alone. She further argues, however, that there was no evidence to rebut the presumption.

¶26 In response, Geigle appears to argue that the circuit court did not err by failing to apply the presumption set forth in WIS. STAT. § 767.451(1)(b)2.b. because the court's physical placement decision was instead governed by § 767.451(2)(a).[5] Based on subsec. (2)(a), Geigle seems to contend that the court

---

[5] WISCONSIN STAT. § 767.451(2)(a) applies when the parties have substantially equal periods of physical placement and circumstances make it impractical for the parties to continue to have substantially equal physical placement. If those criteria are met, a court may modify physical placement "if it is in the best interest of the child." ***Id.*** Subsection (2)(a) does not impose a presumption that having substantially equal periods of physical placement is in the best interest of the child.

did not need to apply a presumption that continued placement under the 2017 order was in Gabe's best interest. In the alternative, Geigle argues that the court's decision reflects that it considered the rebuttable presumption when determining legal custody and that the evidence was sufficient to rebut any presumption regarding physical placement.

¶27 For our purposes, we will assume, without deciding, that the circuit court's decision to modify physical placement was governed by WIS. STAT. § 767.451(1)(b) because, ultimately, the application of the rebuttable presumption under § 767.451(1)(b)2.b. does not alter the outcome of this appeal.[6] Under § 767.451(1)(b)1., a court may modify a physical placement order after two years if: (1) there has been a substantial change of circumstances since the entry of the last order affecting physical placement; and (2) the modification is in the best interest of the child. Again, the court must consider the factors under WIS. STAT. § 767.41(5)(am) to determine the child's best interest. *Sikraji*, 358 Wis. 2d 639, ¶24. In addition, as indicated above, there is a rebuttable presumption that "[c]ontinuing the child's physical placement with the parent with whom the child

---

[6] For WIS. STAT. § 767.451(2)(a) to apply, the parties must have had "substantially equal periods of physical placement." Neither party, however, has explained the meaning of "substantially equal periods of physical placement" or adequately discussed whether their roughly 60/40 physical placement schedule during the year met that statutory standard. Because neither party has developed a statutory interpretation argument regarding § 767.451(2)(a) and because it ultimately does not affect the outcome of this appeal, we will assume, without deciding, that subsec. (2)(a) does not apply.

We do note, however, that the 2017 order reflects that the circuit court found "shared and equal placement is necessary" and that "the shared and equal placement schedule … accomplishes the objectives of the statute and is in [Gabe's] best interest." The court awarded "shared placement" in 2017. In its 2020 order modifying placement, the court similarly stated that it had previously "ordered shared physical placement, with each parent having equal parenting time."

resides for the greater period of time is in the best interest of the child." Sec. 767.451(1)(b)2.b.

¶28 Although the circuit court did not explicitly acknowledge the rebuttable presumption in WIS. STAT. § 767.451(1)(b)2.b. in its decision, the absence of such a statement is not, as Benner contends, reversible error alone. Rather, we may examine the record to determine whether the court's findings nevertheless support its decision to modify physical placement. *See Earl*, 123 Wis. 2d at 205; *see also Andrew J. N. v. Wendy L. D.*, 174 Wis. 2d 745, 767, 498 N.W.2d 235 (1993) ("[W]e will not reverse if facts of record applied to the proper legal standard support the [circuit] court's conclusion."). Here, the court's findings of fact demonstrate that modification of physical placement was in Gabe's best interest despite the presumption stated in § 767.451(1)(b)2.b.

¶29 The circuit court carefully considered all of the factors under WIS. STAT. § 767.41(5)(am), often making numerous findings with respect to each factor. Again, the court found that both parties spent quality time with Gabe and supported his educational and recreational needs. The court also found both parties to have admirable qualities as parents. Benner correctly observes that the court found a lot of positives in Gabe's placement with Benner under the 2017 order, including: (1) Benner's availability during non-school hours; (2) Benner's insight and participation in Gabe's education; (3) Benner's home environment on a farm, where Gabe could ride his dirt bike and care for animals; and (4) Gabe's positive adjustment to his school and teachers in Minnesota. Nonetheless, the court also recognized numerous instances in which Benner's behavior had harmed Gabe.

¶30 The circuit court's concern regarding Benner's harmful behavior was a reoccurring theme throughout its decision. In particular, the court credited Dr. Babbitt's testimony that Benner had attempted to condition Gabe into disliking Geigle, that she subjected Gabe to frequent interviews in hopes of collecting evidence against Geigle, and that she coached Gabe about what to say during his interviews. The court found "[t]his behavior [to be] unhealthy, harmful, and contrary to [Gabe's] best interests." The court further recognized,

> [Gabe] knows that his mother is accusing his father of serious wrongdoing. On some level, [Gabe] knows the accusations are untrue, but [Gabe] feels pressured to say things to please his mother and satisfy her beliefs that Mr. Geigle is an abuser. This causes [Gabe] emotional conflict, distress and anxiety. Ms. Green and other professionals question whether [Gabe] recognizes the difference between reality and Ms. Benner's opinion of Mr. Geigle. This is unhealthy for [Gabe] because it contaminates his memories and perception of reality, which is contrary to his best interests. Ms. Benner's placement time needs to be significantly restricted *to avoid continued harm* to [Gabe].

(Emphasis added.)

¶31 The circuit court also discussed an instance in which Benner engaged in domestic abuse in front of Gabe by striking Geigle six to eight times and breaking Geigle's phone and television. The court found that Gabe stood between his parents during this altercation and "was traumatized." Finally, the court expressed concern that Benner had "no insight about how her behavior harms [Gabe], and therefore, she will likely continue it." Contrary to Benner's assertions, such conduct does relate to her quality of caring for Gabe. The court acknowledged that Geigle had "his own shortcomings as a parent, but none of them remotely approach Ms. Benner's behavior and none of them have caused [Gabe] harm."

¶32     Benner contends—without any support—that the circuit court "did not consider the harm of removing [Gabe] from [Benner's] home." Although the court did not expressly comment on how Gabe might be harmed as a result of having less physical placement with Benner, we reject Benner's proposition that the court did not consider how modification to physical placement might affect Gabe. As we discussed earlier, the court expressly acknowledged the benefits of Benner having physical placement of Gabe and her admirable qualities as a parent. At a minimum, the court would have recognized that Gabe would not have the same benefit of Benner's placement if physical placement were modified.

¶33     Furthermore, the circuit court's decision reflects that Benner's harmful behavior outweighed any harm that might have resulted from modifying physical placement. The court recognized that Gabe's "best interests are fulfilled in a stable and predictable environment." The court also recognized, however, that Gabe was not receiving the predictability and stability he needed because Benner's "repeated allegations of abuse [had] interrupted quality placement." Based on the court's concern that Benner's behavior would continue, the court believed that Benner's placement time needed "to be significantly restricted to avoid continued harm to [Gabe]."

¶34     In light of the circuit court's findings that Benner's behavior would continue to harm Gabe, the court was not required to maintain the status quo and allow further harm to Gabe. The court reached a reasonable conclusion that Gabe's best interest required significantly reducing Benner's physical placement, even when considering the presumption in WIS. STAT. § 767.451(1)(b)2.b. that Benner's existing level of physical placement was in Gabe's best interest. Accordingly, the court did not erroneously exercise its discretion by modifying the 2017 order and awarding Geigle primary physical placement.

¶35    Having rejected Benner's general argument that the circuit court erred in its decision to modify the legal custody and physical placement order, we now consider Benner's remaining and more particular arguments.

## II. The circuit court's consideration of Benner's harmful behavior and of the potential harm in modifying Benner's legal custody and physical placement

¶36    Benner argues that the circuit court's best interest analysis improperly considered the conflict between the parties as more significant than Gabe's daily needs and care.[7]  She contends that "[t]he statutory presumption[s] alert[] courts to the importance of consistency for a child and the trauma that can occur when a dramatic change happens."  Benner again asserts that the court failed to consider how Gabe might be harmed by a reduction in Benner's placement.

¶37    Benner's arguments are misplaced.  Although the circuit court did consider the conflict between the parties and Benner's unreasonable refusal to cooperate, the court also expressed serious concerns regarding how Benner's behavior has harmed, and would likely continue to harm Gabe.  The court properly considered each of the factors under WIS. STAT. § 767.41(5)(am), including Gabe's development and educational needs, as well as factors bearing on the parties' fitness as parents.  As discussed earlier, the court did not find that Benner made better decisions for Gabe's educational and health care needs, nor did it find that Geigle could not properly care for Gabe.  The court also recognized Benner's

---

[7] Benner's arguments appear to challenge the modification of both legal custody and physical placement, but they are, at times, unclear in that regard.  We recognize that some of her arguments under this section may be more relevant to legal custody or physical placement and could therefore be addressed earlier in this opinion.  In the interest of completeness, we will nevertheless construe her arguments discussed in this section as challenging both, at least to the extent that is Benner's intent.

17

positive qualities as a parent, and it would have been well aware of the obvious reality that Gabe would not benefit as much from Benner's positive qualities if the court awarded Geigle sole legal custody and primary physical placement. Nevertheless, given the other evidence presented, the court could reasonably conclude that Benner's custody and placement needed to be limited in order to prevent further harm to Gabe.

¶38     Benner also contends that *Andrew J. N.* is instructive and shows that the harm of separating a child from the child's mother might be greater than any harm associated with a mother interfering with the child's relationship with the father.  In *Andrew J. N.*, our supreme court reviewed a circuit court's decision to modify a less-than-two-year-old custody and placement order.  *Andrew J. N.*, 174 Wis. 2d at 755-58.   The court's decision was governed by WIS. STAT. § 767.325(1)(a)  (1991-92), which required "*substantial evidence* that the modification is *necessary* because the current custodial conditions are physically or emotionally harmful to the best interest of the child …."  *Andrew J. N.*, 174 Wis. 2d at 760 (emphases added).  In considering this standard, the supreme court recognized that "substantial evidence" means "considerable in amount" and that "[t]he 'necessary' standard requires more than a showing that the proposed modification is in the child's best interest."  *Id.* at 760-61 (citation omitted).  The court concluded "[t]here are no facts of record which provide a reasonable basis for the [circuit] court to conclude that modification was 'necessary.'"  *Id.* at 768.

¶39     We disagree with Benner's argument that *Andrew J. N.* is instructive.   Modification in that case required "substantial evidence" that modification was "necessary"—standards that were inapplicable to the circuit court's decision here.  *See id.* at 760; *see also* WIS. STAT. § 767.451(1)(b). Moreover, the *Andrew J. N.* court expressed concern regarding the lack of

evidence showing harm to the child in that case. *Andrew J. N.*, 174 Wis. 2d at 768-69. Specifically, the court noted that "denying a child the right to visit a parent *may* be emotionally harmful to that child" and that "[t]he expert's opinion that [the mother's] dysfunction '*could*' cause emotional harm to [the child], although relevant to the best interests standard, is much too speculative to assist the [circuit] court in determining whether modification is 'necessary.'" *Id.* Here, the court found that Benner's behavior *had caused harm* to Gabe and that such harm was likely to continue due to Benner's inability to appreciate how her behavior harmed Gabe. *Andrew J. N.* therefore does not benefit our analysis.

¶40 Benner next argues that the circuit court ignored unrebutted expert testimony that the quality of parenting is the best predictor of a child's success. Benner highlights Dr. Champion's testimony that the quality of the parents' relationship never exceeds "the contributions of the individual parenting characteristics." She again contends that the court improperly considered her conflict with Geigle as more important than the quality of each party's parenting.

¶41 Benner's argument again fails to appreciate the circuit court's main reasoning for awarding Geigle sole legal custody and primary physical placement. The court was not exclusively concerned with the parties' conflict with each other. Rather, the court's biggest concern was with how Benner's behavior caused—and was likely to continue to cause—harm to Gabe. Specifically, the court was concerned that Benner conditioned Gabe into disliking Geigle; that she had exaggerated and misrepresented Gabe's statements; that she might be contaminating Gabe's memory; that she engaged in domestic abuse that traumatized Gabe; and that she had "interfered with Mr. Geigle's placement, communication, and relationship with [Gabe]."

¶42    Even if the circuit court had accepted Dr. Champion's testimony that the quality of parenting is the best predictor of a child's success, the court was not required to reach a different conclusion in this case because Benner's harmful behavior is not indicative of quality parenting. The court could reasonably find, as it did, that Gabe's best interest required that Benner's custody and placement be limited.

**III.  The circuit court's reliance on Dr. Babbitt's custody study**

¶43    Benner also argues that the circuit court erroneously relied on Dr. Babbitt's custody study. She first contends that Babbitt improperly filed his study on the same day he testified, which she contends violated the timing requirements in WIS. STAT. § 767.405(14)(b)1. In response, Geigle asserts that Benner "waived" any argument regarding the court's reliance on Babbitt's study by failing to object to the admission of Babbitt's report. He further contends that § 767.405(14) does not apply because the court did not order Babbitt to complete a custody study; rather, Gabe's GAL requested the study.

¶44    Benner does not respond to Geigle's argument that she "waived" any argument regarding Dr. Babbitt's custody study, and we therefore deem that argument conceded. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments may be deemed conceded). In any event, Benner did not object to the admission of Babbitt's report at the hearing, and she therefore has forfeited any argument regarding the circuit court's consideration of the study. *See Holmes v. State*, 76 Wis. 2d 259, 272, 251 N.W.2d 56 (1977) ("[A]n objection must be made as soon as the opponent might reasonably be aware of the objectionable nature of the testimony. Failure to object results in a [forfeiture] of any contest to that

20

evidence." (citations omitted)); *see also* **State v. Ndina**, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612 (clarifying that forfeiture is the failure to make the timely assertion of a right and waiver is the intentional relinquishment or abandonment of a known right). Furthermore, the timing requirements under WIS. STAT. § 767.405(14)(b)1. do not apply here because, as Babbitt testified, the GAL retained him to complete the study, not the court.

¶45    Alternatively, Benner argues that Dr. Babbitt's report and testimony were flawed and incredible—apparently, as a matter of law—in light of Dr. Champion's report and testimony. Among other things, Benner emphasizes Champion's conclusions that Babbitt reached new and conflicting psychological conclusions without any objective testing, that his evaluation of Geigle's intelligence was unsupported by any objective data, and that his testing did not comport with the current standard of empirical support required in high-stakes forensic evaluations.

¶46    Contrary to Benner's arguments, the circuit court did not err in relying on Dr. Babbitt's testimony. The court, sitting as the trier of fact in a custody dispute, had the responsibility of considering the credibility of the witnesses; "weigh[ing] the evidence, including expert testimony[;] and resolv[ing] conflicts in the evidence." *See* **Hughes**, 223 Wis. 2d at 128. The court did precisely that, stating:

> Dr. Champion believes there are flaws and irregularities in Dr. Babbitt's work, and because of them, Ms. Benner asks the Court to completely disregard Dr. Babbitt's opinions. The Court is disinclined to do so. Expert witnesses commonly find flaws in their opponent's work, and Dr. Champion brought her considerable expertise to bear in such an endeavor. But none of Dr. Champion's criticisms persuaded the Court that Dr. Babbitt's opinions were invalid or should be disregarded. In the absence of an

alternative opinion, against which to weigh Dr. Babbitt's opinion, Dr. Champion's criticisms were not helpful.

¶47 The circuit court further explained that it was only concerned with Benner's behavior, not with Dr. Babbitt's diagnosis or explanation for that behavior:

> Dr. Babbitt offered a psychological explanation for Ms. Benner's behavior, an explanation that stirred great controversy during the trial. *The reason behind Ms. Benner's behavior is of little concern to this Court.* What is the Court's concern is the fact that Ms. Benner's behavior is harmful to [Gabe], and [Gabe's] best interests will be fulfilled if Ms. Benner's placement time is limited.

(Emphasis added.) The court's comments reflect that it thoughtfully weighed Babbitt's testimony and opinions and then resolved disputes between his testimony and Champion's testimony. Our role is not to second-guess a circuit court's role in this regard. The court did not err in considering Babbitt's testimony.

## IV. The circuit court's consideration of Benner's reports of child abuse

¶48 Finally, Benner argues that the circuit court erred by denying her motion in limine, which sought to prohibit evidence identifying the persons reporting Gabe as a potential victim of child abuse. Specifically, she contends that WIS. STAT. § 48.981(7) prohibited the disclosure of information identifying her as a reporter. In the alternative, she argues § 48.981(4) creates a presumption that her reports were made in good faith and that the court failed to apply the presumption when considering her reports. She also contends the court erroneously treated unsubstantiated reports as false reports.

¶49    In response, Geigle argues that WIS. STAT. § 48.981(7) does not apply because Benner's reports were made in Minnesota rather than Wisconsin. He further contends that even if WIS. STAT. ch. 48 did apply, the circuit court did not violate § 48.981(7) because it was common knowledge throughout the proceedings that Benner made numerous reports of child abuse.

¶50    We review a circuit court's decision to admit evidence for an erroneous exercise of discretion. *Martindale v. Ripp*, 2001 WI 113, ¶28, 246 Wis. 2d 67, 629 N.W.2d 698. However, the interpretation and application of a statute are questions of law we review de novo. *118th St. Kenosha, LLC v. DOT*, 2014 WI 125, ¶19, 359 Wis. 2d 30, 856 N.W.2d 486.

¶51    "WISCONSIN STAT. § 48.981 provides the procedure for making reports and investigating claims of suspected child abuse or neglect." *D.B. v. County of Green Lake*, 2016 WI App 33, ¶22, 368 Wis. 2d 282, 879 N.W.2d 131. As relevant to this appeal, § 48.981(7)(a) provides that "[a]ll reports made under this section, notices provided under sub. (3)(bm) and records maintained by an agency and other persons, officials and institutions shall be confidential. Reports and records may be disclosed only to the … persons [enumerated under § 48.981(7)(a)1.-17.]" In the context of a child custody proceeding under WIS. STAT. § 767.451, the statute provides that "either parent of a child may authorize the disclosure of a record for use in [the proceeding] … when the child has been the subject of a report. Any information that would identify a reporter shall be deleted before disclosure of a record under this paragraph." Sec. 48.981(7)(b). In addition, § 48.981(4) provides that "[f]or the purpose of any proceeding, civil or criminal, the good faith of any person reporting under [§ 48.981] shall be presumed."

¶52    Even if we were to assume, as Benner argues, that WIS. STAT. ch. 48 applies to the circumstances at hand, the plain language of WIS. STAT. § 48.981(7) did not require—under the circumstances of this case—that the circuit court exclude evidence of Benner's reports of suspected child abuse.  Subsection (7)(b) specifically permitted Geigle or Benner to authorize the disclosure of reports of child abuse involving Gabe for use in these proceedings.  In addition, although subsec. (7)(b) requires that any identifying information of a reporter be deleted, Benner's identity as a reporter was not "confidential" long before she filed her motion in limine, which was filed only one business day before the trial began.  As Geigle aptly observes, Benner's identity as a reporter was "common knowledge."

¶53    Indeed, in July 2019, Geigle filed an affidavit asserting that Benner had "made multiple false allegations against [him] to law enforcement, social workers and others.  All of her claims have been unsubstantiated."  Benner, in turn, filed her own affidavit admitting that she had filed multiple reports: "My reports are not 'allegations.'  I am truthfully reporting what [Gabe] has told me."  Benner then proceeded to identify several of the allegations that she had in fact reported, which need not be repeated here.  Benner also stated that others had filed reports, including Gabe's teachers and a therapist—identifying the therapist specifically by name.

¶54    Whether the initial disclosure of Benner's identity as a reporter of child abuse violated WIS. STAT. § 48.981(7)—whenever that may have occurred and whoever may have done so—is not at issue in this appeal.  What is at issue is whether the circuit court erroneously exercised its discretion by denying Benner's motion to exclude evidence "disclosing the identity of the reporter" even after the

parties and the court knew Benner to be a reporter, and after that fact became a relevant, substantive issue in these WIS. STAT. ch. 767 proceedings.[8]  Because § 48.981(7)(b) allowed Geigle or Benner to authorize the disclosure of child abuse reports involving Gabe in these proceedings and because Benner herself acknowledged to the court that she had reported Geigle multiple times for possible child abuse, we conclude the court did not erroneously exercise its discretion by allowing Geigle to present evidence of Benner's numerous reports.

¶55     In addition, the circuit court did not conclude that Benner's unsubstantiated reports were false.  In fact, the court left open the possibility of the reports being true while recognizing that "[c]redible evidence suggests that either Ms. Benner has jumped to conclusions from misinterpreted facts or that she has outright misrepresented facts to concoct a false narrative about Mr. Geigle.  In either case, the parties cannot co-parent under the persistent cloud of unfounded allegations of child abuse."  The court further acknowledged that despite the numerous reports, "[n]one of the referrals, investigations, or interviews produced evidence sufficient to substantiate the allegations of abuse or commence child protection proceedings."  The court also noted that none of the trained professionals "who spoke with [Gabe] found evidence to substantiate claims that [he] has been abused."  In sum, the court did not find that Benner's reports of abuse were false, but it recognized that "the evidence she presented fell well short" of showing that Geigle had abused Gabe.  It was well within the court's province to reach these conclusions under the circumstances.

---

[8] We note that Matthew Stephenson, a child protection investigator with Washington County Community Services in Minnesota, did not identify any reporter other than Benner in his testimony.  In fact, he redacted information of those mandatory reporters from the relevant documents and expressly refused to provide "the name of the reporter if it's a mandated reporter."

¶56    The circuit court's decision also reflects that the evidence rebutted any presumption of good faith reporting under WIS. STAT. § 48.981(4). The court gave Benner the benefit of the doubt by declining to find that she outright misrepresented facts. The court nevertheless found Benner's conduct to be severely misguided, especially in light of Gabe's best interest. Again, the court found that none of Benner's numerous reports were substantiated, none of the trained professionals found evidence to substantiate Benner's claims, and the evidence Benner presented at the hearings "fell well short" of proving that Geigle had abused Gabe. The court also found that Benner told Geigle on more than one occasion that "she wants to minimize his time with [Gabe] and that she will outspend him in court to achieve her goal." Significantly, the court also "question[ed] the veracity of Ms. Benner's accusations of abuse" because her proposed placement would have still allowed Geigle to have physical placement of Gabe on the weekends throughout the year. Based on all of these findings—coupled with the court's findings that Benner unreasonably refused to cooperate with Geigle—the court could reasonably determine that Benner did not act in good faith when filing numerous, unsubstantiated reports of child abuse.

¶57    Benner further contends, relying on WIS. STAT. § 48.981(4), that as a good faith reporter she has "immunity from any liability, civil or criminal …." She argues that one could reasonably conclude that immunity from "liability" includes protection against "losing primary placement of your child and having your contact severely limited." In essence, she contends that the circuit court could not consider her reports of child abuse as a factor in deciding whether to modify the 2017 order.

¶58    Even if we were to conclude that the presumption of good faith had not been rebutted in this case, we disagree that losing placement and custody of a

26

child constitutes "liability," as that term is used in WIS. STAT. § 48.981(4). Section 48.981(4)(a)1. provides that any person who participated "in the making of a report" "in good faith in connection with a report under this section has immunity from any liability, civil or criminal …." Although "liability" is not specifically defined, § 48.981(4) plainly does not apply to the present circumstances. *See State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 ("[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" (citation omitted)). "Liability" is generally defined as "[t]he quality, state, or condition of being legally obligated or accountable; legal responsibility to another or to society, enforceable by civil remedy or criminal punishment." *Liability*, BLACK'S LAW DICTIONARY (11th ed. 2019).

¶59　An order reducing a party's custody or placement does not impose civil or criminal "liability" because it does not impose legal responsibility or hold that party legally accountable. *See id.* Moreover, a court's decision to modify a custody or placement order is guided by its analysis of the child's best interest, not an analysis of whether one parent should be held legally responsible or accountable for his or her conduct. *See, e.g.*, WIS. STAT. § 767.451(1)(b). The circuit court could therefore determine that despite Benner making reports in good faith, her conduct was nevertheless harmful to Gabe and his best interests were served by awarding Geigle sole legal custody and primary physical placement.

　　　　*By the Court.*—Order affirmed.

　　　　This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

27